# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF NORTH CAROLINA

KELLY MARIE MERZKE and
MICHAEL MERZKE, Individually and as
Parents of Minor Child,
███████████████████

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiffs Kelly Marie Merzke and Michael Merzke, Individually and as Parents of Minor

Child, ███████████ (collectively "Plaintiffs"), by and through their undersigned counsel,

and by way of this Complaint, aver as follows:

## INTRODUCTION AND SUMMARY OF ACTION

1. This is a personal injury action asserting reckless conduct and negligence in

   connection with actions and/or omissions of the United States of America ("USA" or

   "Defendant") with regard to the labor of Kelly Marie Merzke and delivery of minor

   child ████████████

2. Upon information and belief, either on its own or by and through its agents and/or

   employees, Defendant was responsible for providing healthcare to Kelly Marie

   Merzke and minor child ███████████████ through its healthcare facility identified

   as Womack Army Medical Center at Fort Bragg, North Carolina. At all times

1

mentioned herein and material hereto, Defendant was and is responsible for the malpractice or negligence of a physician . . . or other supporting personnel of the United States Department of the Army in furnishing medical care or related services, . . . . while in the exercise of his or her duties in or for the Department of the Army or any other Federal department, agency, or instrumentality" within the meaning of 22 U.S. Code § 2702.

## PARTIES

3. Plaintiffs were, at all relevant times hereto, citizens and residents of Hoke County, North Carolina. Specifically, at all relevant times hereto, Plaintiffs resided at 488 Cape Fear Road, Raeford, North Carolina 28376-7282.

4. Defendant may be served via the mechanisms described in FRCP4(i)(1), Attorney General of the United States, U. S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

## JURISDICTION AND VENUE

5. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1346(b)(1).

6. Venue for this action is properly laid in this Court pursuant to and in accordance with 28 U.S.C. § 1391.

7. The amount in controversy is more than $75,000, not counting interest and costs of court, because of the personal and emotional injuries, pain and suffering of Kelly Marie Merzke, minor child ███████████ and personal and emotional injuries suffered by Michael Merzke, as well as the responsibility of Kelly Marie Merzke and Michael Merzke to provide medical care for their minor child ███████████

2

until he reaches 18 years of age and have suffered loss of services and other elements of personal injury law recognized under Federal and North Carolina State laws.

## FACTUAL ALLEGATIONS

8. Kelly Marie Merzke was admitted to the Department of Labor and Delivery at Womack Army Medical Center on or about 10 June 2020, when and where she was diagnosed as having "advanced maternal age" and suffering from gestational diabetes. Despite prolonged labor and fetal distress indicated by fetal monitoring strips, delivery was delayed. ██████████ was born on 12 June 2020 with Apgars of 0, 4, 6 at 1, 5 and 10 minutes of life. ██████████ had to be revived upon delivery in front of his parents, Kelly Marie and Michael Merzke. As a result of the delay in delivery, infant ██████████ suffered hypoxic-ischemic encephalaopathy, requiring transfer from Womack Army Medical Center to University of North Carolina and for cooling protocol. At UNC, ████ experienced seizures and feeding issues. MRI demonstrated multifocal areas of restricted diffusion consistent with hypoxic-ischemic encephalopathy. As a result of the hypoxic-ischemic encephalopathy, ████ has motor delays and diffuse hypotonia as well as persistent fisting, neurological damage, seizures, hearing loss, dystonic cerebral palsy with intermittent focal myoclonus, dystonia, strabismus, developmental delay and other disabilities.

9. Kelly Marie Merzke was admitted to Womack Army Medical Center at 40 weeks of pregnancy, diagnosed with gestational diabetes although her recorded blood pressures did not meet criteria for that diagnosis. Lab results on admission were normal;

3

induction of labor started at 1050 but Cervidil came out at 1620 due to tachysytole. Dr. Natasha Gouey-Guy was made aware of the tracing and contraction pattern at 2015 on 10 June 2020 and decided to replace Cervidil at 2050.

10. At 0315 on 11 June 2020, a nurse made Dr. Gouey-Guy aware of occasional late decelerations and overall moderate variability but no further orders were given at that time.

11. At 0530 on 11 June 2020, there was evidence of possible spontaneous rupture of membranes with a small amount of clear fluid noted; Dr. Gouey-Guy was notified but gave no further orders at that time.

12. At 0615 on 11 June 2020, Cervidil fell out; Dr. Gouey-Guy placed the Foley bulb and ordered 4 mg Zofran for nausea. At 0730, administration of Pitocin started.

13. At 1945 on 11 June 2020, a small amount of swelling or edema was noted on ███████ head, a common sign that the baby's head was under pressure as it moved through the birth canal during a prolonged or difficult vaginal delivery.

14. At 2030 on 11 June 2020, Dr. Gouey-Guy ordered Pitocin increased to 22 mU/min. with a further increase to 28 mU/min. at 2230. Dr. Gouey-Guy was at patient's bedside to discuss pain management options and Kelly Marie Merzke opted to undergo epidural with Pitocin re-started at 14 mU/min. at 2330 on 11 June 2020 and at 2353 on 11 June 2020, late decelerations again were noted.

15. At 0000 on 12 June 2020, prolonged late decelerations were noted; bolus was given and 300 ml Pitocin was continued at 14 mU/min. At 0050, Kelly Marie Merzke was repositioned onto her right side due to recurring late decelerations.

4

16. Dr. Gouey-Guy assessed fetal strips at 0052 on 12 June 2020 and at 0055, Dr. Gouey-Guy discussed placing internal monitors and starting an amnioinfusion for late decelerations. Amnioinfusion was performed at 0110 on 12 June 2020 with Pitocin decreased to 8 mU/min. at 0118. At 0306, late decelerations again were noted with contractions.

17. At 0639, Kelly Marie Merzke was pushing and fetal heart rate was down in the 60s with minimal variability noted; Dr. Gouey-Guy attempted to place Mighty Vac on ███ s head with assistance from Dr. Conrad. At 0644, Mighty Vac was on ( ███ head, suction was applied by nurse with instructions from Dr. Conrad; methergine administered. During contraction, Mighty Vac became displaced; fetal heart rate was at 140. At 0647, midline episiotomy was performed by Dr. Conrad; Might Vac was reapplied to ███ head, awaiting next contraction; fetal heart rate at 160. The Mighty Vac popped off during contraction; traction was applied by Dr. Gouey-Guy for 30 seconds before pop-off. At 0540, Mighty Vac assisted delivery was performed with tight cord around ███ houlders; delivery through vagina with meconium present at delivery. ███ was handed off to NICU standby team; ███ had no cry or tone at delivery, meeting criteria for cooling for hypoxic-ischemic encephalopathy, severe. ███ was placed in a pre-warmed radiant heater; heart rate 0 via auscultation. Positive pressure ventilation was initiated with 100% fraction of inspired oxygen; pulse oximeter and cardiac monitor leads were placed. With positive pressure ventilation, ███ heart rate was about 20; chest compressions were initiated; mask adjusted and peak inspiratory pressure increased to 25. ███ was intubated at 90

5

seconds of life in one attempt with adequate chest rise. ███████ heart rate then was over 80 and increasing; he was taken to NICU for medical management.

18. Based on the hypoxic-ischemic encephalopathy screening, UNC Chapel Hill was contacted and responded immediately with Life Flight. While awaiting arrival of Life Flight, ███████ was passively cooled; parents were updated and were anxious and tearful. ███████ prognosis was guarded at that time.

19. Upon arrival at UNC, ███████ cooling treatment continued through 15 June 2020. His diagnosis on admission to UNC was consistent with moderate to severe encephalopathy. MRI on 16 June 2020 showed multifocal areas of restricted diffusion consistent with hypoxic-ischemic encephalopathy and likely subgaleal hematoma. Infant tone improved and ███████ made progress with oral feedings. ███████ remained a patient at UNC until 29 June 2020.

20. At one or more times during the time period on or about 10 June 2020 through on or about 12 June 2020, Defendant, individually or by and through one or more actual, apparent or ostensible agents or employees for whom Defendant was and is responsible was negligent and deviated from the applicable standard of care in doing or failing to do one or more of the following and thereby caused, directly, proximately and in fact, ███████████████████ severe personal injury resulting in the injuries and damages Plaintiffs describe herein:

   a. in failing to recognize arrested labor when cervical dilation stalled at 9 cm for four hours despite administration of Pitocin;

   b. in failing to recognize late and prolonged decelerations beginning at approximately 2350 on 11 June 2020 and continuing despite amnioinfusion at

6

0100 on 12 June 2020 as calling for cesarean section with delivery before 2400 on 11 June 2020;

c. in failing to properly appreciate marked variability starting at 0100 on 12 June 2020 as indicating worsening fetal hypoxia;

d. in failing to discontinue Pitocin infusion in the presence of marked variability starting at 0100 on 12 June 2020 but rather increasing Pitocin at 0200 on 12 June 2020 and increasing it further thereafter;

e. in failing to properly call for cesarean section no later than 0300 on 12 June 2020 for persistent and worsening CAT II fetal monitor strips;

f. in failing to timely take proper steps to see that ███████████████ true condition was timely and properly treated;

g. in failing to enforce, adhere to or comply with one or more of the standards, rules, regulations, policies, procedures, protocols or manual provisions then in effect and applicable to Defendant; and

h. in otherwise neglecting ██████████ in other ways and means that further discovery may reveal.

21. As a direct, proximate and factual result of Defendant's negligence, described herein, ████████████ suffered severe personal injury and Kelly Marie Merzke and Michael Merzke suffered emotional and personal injuries also as a direct, proximate and factual result of Defendant's negligence. Defendant is liable to Plaintiffs for damages as follows:

a. physical pain of Kelly Marie Merzke and ██████████ from 10 June 2020 at least through 29 June 2020;

7

b. mental suffering of Kelly Merzke and Michael Merzke from 10 June 2020 through the present; and

c. reasonable medical expenses throughout the lifetime of ███████████ related to the treatment, management and mediation of the personal injuries suffered as a direct, proximate and factual result of Defendant's negligence and the hypoxic-ischemic encephalopathy that resulted from the same.

22. All conditions precedent for the filing of this Complaint have been met and it has been filed prior to the expiration of any statutes of limitation.

23. Plaintiffs object to the prefiling requirements of N.C. Gen. Stat. § 1A-1, Rule 9(j) that effectively require Plaintiffs to prove their case before factual discovery is even begun, denies medical malpractice plaintiffs their rights of due process of law and equal protection under the law, the right to open courts, and the right to a jury trial, violates the separation of powers, and confers an exclusive emolument on health care providers, in violation of the United States and North Carolina constitutions. Rule 9(j) violates the Seventh and Fourteenth Amendments of the United States Constitution, and article I, sections 6, 18, 19, 25 and 32, and Article IV, sections 1 and 13 of the North Carolina Constitution. Without waiving these objections, counsel for Plaintiffs provides the following information to comply with the requirements of Rule 9(j): the medical care rendered by employees, agents, assigns and servants of Defendant and all medical records pertaining to the alleged negligence that are available to Plaintiffs after reasonable inquiry have been reviewed before the filing of this complaint by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care

8

provided by the employees, agents, assigns and servants of Defendant did not comply with the applicable standard of care. If the Court later determines that Plaintiffs' 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), Plaintiffs will seek to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and Plaintiffs hereby move the Court, pursuant to Rule 9(j)(2) to so qualify that person.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For general damages, all in an amount to be proven at the time of trial;

2. For a trial against Defendant;

3. For payment of costs of suit herein incurred;

4. For both pre-judgment and post-judgment interest on any amounts awarded;

5. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

6. For such other and further relief as the Court may deem just and proper.

This the 23rd day of May , 2023.

LAW OFFICES OF WADE E. BYRD, P.A.

By: _____

Wade E. Byrd (NC Bar #5534)
Post Office Drawer 2797
Fayetteville, North Carolina 28302
(910) 323-2555 (Telephone)
(910) 323-9697 (Facsimile)
wbyrd@wadebyrdlaw.com

Counsel for Plaintiffs

10